IRENE MARSHALL vs. COMMONWEALTH.

Bristol. April 8, 1992. - November 5, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Compensation of Victims of Violent Crimes. Wanton or Reckless Conduct.*

In an action against the Commonwealth under G. L. c. 258A, the Compensation for Victims of Violent Crimes Act, brought by a mother seeking to recover funeral expenses related to her daughter's death from a drug overdose, the evidence did not warrant a finding that the death was caused by another person's wanton or reckless conduct in giving or selling drugs to the daughter; in the circumstances, the court did not reach the question whether "force or violence or threat of violence," for purposes of the Act's definition of "crime," is necessarily implied in wanton or reckless conduct. [596-597]

CIVIL ACTION commenced in the New Bedford Division of the District Court Department on January 26, 1988.

The case was heard by *Robert J. Kane*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Scott Harshbarger*, Attorney General, *Susan M. Motika & Jennifer Renna Ferreira*, Assistant Attorneys General, for the Commonwealth, submitted a brief.

O'CONNOR, J. This appeal involves a claim filed by the plaintiff, Irene Marshall, the mother of Kelly Marshall, under the Compensation for Victims of Violent Crimes Act, G. L. c. 258A (1990 ed.), seeking recovery from the Commonwealth of the cost of Kelly's funeral. The principal issue is whether the trial judge was warranted in concluding that Kelly Marshall was the victim of a crime of force or violence, which is a prerequisite to recovery under the Act. Chapter 258A, § 3, provides in relevant part: "Except as hereinafter

provided, the following persons shall be eligible for compensation for the following losses and services pursuant to this chapter: . . . (*c*) In the case of the death of the victim as a direct result of [a] crime, any . . . family member of a victim who incurs funeral expenses directly related to the victim's death . . . shall be eligible for compensation for said funeral expenses up to the amount of two thousand dollars." Section 5 of c. 258A provides: "No compensation shall be paid unless the court finds that a crime was committed, that such crime directly resulted in personal physical injury to, or the death of, the victim, and that police records show that such crime was promptly reported to the proper authorities." Chapter 258A, § 1, defines the word "crime," for purposes of c. 258A as follows: "Crime, an act committed by an adult or a juvenile which, if committed by a mentally competent, criminally responsible adult, who had no legal exemption or defense, would constitute a crime; provided, however, that such act involves the application of force or violence or the threat of violence by the offender upon the victim."

District/Municipal Supp. R. Civ. P. 150 (1978) deals with the determination of claims for compensation of victims of violent crimes. Rule 150 (d) provides in relevant part that, "[a]t the conclusion of his investigation, the Attorney General shall prepare a report to the court recommending the amount of compensation, if any, to be awarded to the claimant and the reasons therefor." Rule 150 (f) states that, "[u]pon receiving the Attorney General's report . . . the Clerk shall assign a date for hearing of the claim. . . . Hearings shall be conducted in such manner as to accomplish the just and speedy determination of the claims involved. Rules of evidence, other than those pertaining to privileges of parties and witnesses, need not be observed in such hearings; evidence may be admitted and given probative effect only if, in the judgment of the court, it is the kind of evidence on which reasonable persons are accustomed to rely in the conduct of serious affairs." The Attorney General investigated the plaintiff's claim and reported to the court pursuant to rule 150 (d). In his report, he stated that Kelly Marshall had died of

a "self-inflicted drug overdose," and he "[did] not recom-
mend payment."

After receiving a memorandum from the Commonwealth
in support of the Attorney General's position, a judge of the
District Court issued an order that payment of $2,046 be
made to the plaintiff. In his order the judge stated: "This
Court rules that involuntary manslaughter involves force or
violence and finds, based upon the Attorney General's report
including appendices, that: (1) there is sufficient evidence for
civil purposes that Kelly Marshall was the victim of an invol-
untary manslaughter and (2) that Kelly Marshall, by her ac-
tions, in part contributed to her loss of life." (Footnotes omit-
ted.) The Commonwealth appealed and, pursuant to
District/Municipal Supp. R. Civ. P. 150 (h), the judge re-
ported the matter, including the rulings in issue, to the Ap-
pellate Division. The judge reported that, based on the police
reports that had been furnished by the Attorney General, the
court "[found], under a preponderance of evidence standard,
that Kelly Marshall's death was the result of involuntary
manslaughter with Miss Marshall's actions facilitating the
wrongful act. . . . Ruling that involuntary manslaughter
under the case law must draw from an assault and battery,
this Court found that the act causing Kelly Marshall's death
was one of force or violence and, accordingly, awarded Irene
Marshall funeral expenses reduced by Kelly Marshall's con-
tributory conduct. Under Rule 150 the Attorney General's
office filed an appeal raising the question of whether involun-
tary manslaughter involves force or violence. . . . I hereby
report the question of law to the Appellate Division for
determination."

The Appellate Division affirmed the judge's order, reason-
ing that the evidence (police reports) warranted a finding
that, while she was in a depressed state, Kelly Marshall, a
minor, had been sold the drugs that caused her death. The
court also noted the presence of evidence that inadequate
measures were taken to summon medical help for Kelly by
persons who were with her when she first lost consciousness.
"Based on the evidence before it," the Appellate Division

said, "the trial court rightly could have determined by a preponderance [of the evidence] that Kelly Marshall's death was the result of wanton and reckless conduct (i.e., involuntary manslaughter)." The court then turned to the following language in *Commonwealth* v. *Welansky*, 316 Mass. 383, 401 (1944): "Wanton or reckless conduct is the legal equivalent of intentional conduct. ... . If by wanton or reckless conduct bodily injury is caused to another, the person guilty of such conduct is guilty of assault and battery." (Citations omitted.) The Appellate Division concluded: "[W]e are of the opinion that in the instant case the legal equivalent of a battery was committed on the victim. The trial judge was justified in concluding, after weighing all the evidence, that a crime involving the application of force or violence within the definition of c. 258A, § 1, could follow from the wanton and reckless conduct of individuals supplying drugs to this victim." We transferred the appeal to this court on our own motion.

We conclude that the evidence, that is, the police reports, did not warrant a finding that Kelly Marshall's death was caused by another person's wanton or reckless conduct. Therefore, there being no other arguable basis for a finding of "force or violence or threat of violence," the Commonwealth is entitled to a judgment in its favor. In the circumstances, we do not reach the question, addressed by the District Court judge and the Appellate Division, whether "force or violence or threat of violence," within the meaning of G. L. c. 258A, § 1, is necessarily implied in wanton or reckless conduct.

The facts most favorable to the plaintiff contained in the police reports were as follows: On July 24, 1987, Kelly purchased thirty Xanax tablets from Henry Olsen. She consumed five of them along with alcoholic beverages on July 25. At about 11:30 that evening, after an argument with her boyfriend, Kelly took a walk and arrived at a hotel at 1 A.M., July 26. She was upset, crying, and looking for drugs. She located a friend in one of the hotel rooms and talked with him. At one point she left the room and returned fifteen to

twenty minutes later. According to the friend's statement to the police, Kelly probably obtained more Xanax tablets from an unlocked hotel room during that interval and ingested them. At approximately 3 A.M. Kelly began to lose consciousness. Her friend, believing that she would be all right, did not seek medical assistance for several hours. Kelly was then transported to the hospital where she was pronounced dead.

We interpret the statement in the judge's order that he "finds . . . that . . . there is sufficient evidence for civil purposes that Kelly Marshall was the victim of an involuntary manslaughter," as saying that, pursuant to G. L. c. 258A, § 5, the judge found as a fact that a crime had been committed and that Kelly's death resulted. The Commonwealth does not argue for any other interpretation of the order. That leads us to the question whether the police reports warranted a finding that Kelly's death was caused by another person's wanton or reckless conduct. We think they did not. According to the police reports, Kelly purchased thirty Xanax tablets on July 24, 1987, and consumed five of them on July 25. There was evidence that she gave the other twenty-five tablets away, but even if we disregard that evidence as not favorable to the plaintiff's case, a finding would not be warranted that Kelly ingested more than five of the thirty tablets she purchased. If we also disregard as unfavorable to the plaintiff the evidence that Kelly obtained more tablets on July 26 from an unlocked hotel room, the remaining evidence would not warrant a finding that she died from drugs that had been sold or given to her in circumstances that could reasonably demonstrate wanton or reckless conduct. This case is unlike *Commonwealth* v. *Catalina*, 407 Mass. 779 (1990) (sale of heroin to known addict is a sufficient predicate to a manslaughter conviction), in that regard.

The order of the Appellate Division is reversed. Judgment for the defendant is to be entered.

*So ordered.*